UNITED STATES DISTRICT COURT
SOUTHER DISTRICT OF NEW YORK
-------------------------------------------------------x

JONATHAN STEINBERG,

        Plaintiff,

   -v-                                                No. 15CV278-LTS-DCF

STEPHEN M. ELKMAN, ALAN GERST,
ROBERT E. MICHAEL & ANDREW A. CUOMO

        Defendants.

-------------------------------------------------------x

### MEMORANDUM OPINION AND ORDER

        Plaintiff Jonathan Steinberg ("Plaintiff" or "Steinberg") brings this pro se action against Defendants Stephen Elkman ("Elkman"), Alan Gerst ("Gerst"), Robert Michael ("Michael") and Governor Andrew Cuomo in his official capacity ("Governor Cuomo" and, collectively "Defendants"), asserting causes of action pursuant to 42 U.S.C. § 1983 and 18 U.S.C. § 1951 (the Hobbs Act), as well as several common law tort claims. Plaintiff alleges, inter alia, that his rights to: a republican form of government, free speech, due process and equal protection under the federal Constitution were violated throughout the course of proceedings in the Supreme Court of the State of New York, New York County (the "State Court Proceedings"). Before the Court are the motion of Defendants Elkman, Gerst and Michael and the motion of Governor Cuomo to dismiss the Complaint pursuant to Rules 8(a), 12(b)(1), 12(b)(5), and 12(b)(6) of the Federal Rules of Civil Procedure. For the reasons explained below, Governor Cuomo is immune from suit and the Court lacks jurisdiction of this action. The Court has considered the parties' submissions carefully and, for the following reasons, the Defendants'

motions are granted in their entirety.

## BACKGROUND[1]

Plaintiff at one time owned both an Aston Martin DB5 ("DB5") and an Aston Martin DB6 ("DB6"). (Am. Compl. ¶ 1.) In 1999, Plaintiff entered into a contract with Gerst (the "1999 Contract"), the owner of Queens Import Motors, whereby Plaintiff agreed to transfer title of the DB5 to Gerst. (Id. ¶¶ 2, 4, 10.) For reasons that are not entirely clear, Plaintiff thereafter sued Defendant Gerst in the aforementioned State Court Proceedings to rescind the sale contract. (Id. ¶¶ 2, 10.) Plaintiff's claim for rescission was denied. (Id. ¶ 12.) However, due to Gerst's failure to answer Plaintiff's complaint in that matter, Plaintiff obtained a default judgment against Gerst in the amount of $186,000. (Id.)

In 2006, Plaintiff sought to enforce the default judgment as against Gerst's home. (Am. Compl. ¶¶ 16-17.) Gerst responded by successfully moving to vacate the default judgment against him. (Id. ¶ 18.) The matter was subsequently restored to active status in the Supreme Court of the State of New York, New York County (id.), and the case was transferred to the docket of Justice Shirley Werner Kornreich.[2] (Id. ¶ 21.) Plaintiff alleges that, throughout the course of the ensuing State Court Proceedings, Justice Kornreich was motivated by bias and that her actions "reflected some seeming background contact" between herself and Gerst's attorney, Michael. (Id.) Plaintiff cites several alleged actions by Justice Kornreich as examples in support

---

[1] The facts stated herein are drawn from Plaintiff's Amended Complaint and are assumed to be true for the purposes of this motion practice.

[2] The matter was originally heard, and the default judgment granted, by then-Justice Sheila Abdus-Salaam in Supreme Court of the State of New York, New York County. (Am. Compl. ¶¶ 10, 12.)

of his contention that she rendered the State Court Proceedings unconstitutional: at a conference, Justice Kornreich "cut the [P]laintiff's address to the court . . . [w]ithout letting the [P]laintiff address the court" (Am. Compl. ¶ 23); Justice Kornreich denied Plaintiff's request to amend his complaint to plead recently discovered alleged thefts by Gerst (id.)[3]; Justice Kornreich refused to re-sign the default judgment already entered by Justice Abdus-Salaam, instead granting Gerst permission to file an answer to Plaintiff's 1999 complaint (id. ¶ 24); Justice Kornreich denied Plaintiff's request to allow discovery of Gerst's business records, thereby depriving Plaintiff of an opportunity to prove the theft of the DB6 parts (id. ¶ 25); Justice Kornreich granted Gerst's "fact-less and legally unarguable and convoluted" sanctions motion (id. ¶ 28), going as far as to "call[] a private conference with Michael [on August 21, 2008,] to determine the whole action and to extort money from the [P]laintiff by way of purported sanctions for bringing the action (id. ¶¶ 28-29); and, finally, Justice Kornreich "allow[ed] Michael to write her judgment [for her] in the same entirely baseless and unsupported defamatory terms . . . and she agreed with Michael to attempt to extort over $25,000 from the [P]laintiff . . . influencing the Special Referee to fix that sum in supposed sanctions." (Id. ¶ 30.)

In May 2009, Plaintiff brought an Article 78 petition in the New York Supreme Court Appellate Division, First Department, challenging Justice Kornreich's decisions as biased and corrupt, and arguing that the case should be remanded to the Supreme Court and referred to a "fair and impartial judge."  (Id. ¶ 44.)  Plaintiff's Article 78 petition was denied.  (Id. ¶ 45.) See Steinberg v. Kornreich, 63 A.D.3d 634, 634 (N.Y. App. Div. 1st Dep't 2009).  Plaintiff then

---

[3] Plaintiff alleges that, while the Aston martin DB6 was stored at Queens Imports Motors, Gerst stole parts from the vehicle, including the engine, to sell to other Aston Martin owners.  (Am Compl. ¶ 14.)

appealed from certain of Justice Kornreich's specific determinations, including her decisions not to recuse herself, to dismiss all of Plaintiff's claims against Gerst and to grant Gerst's motion for sanctions and costs in the amount of $25,000.  (Am. Compl. ¶ 55.)  The Appellate Division affirmed each of the challenged decisions.  (Id. ¶ 59-60.)  See Steinberg v. Queens Import Motors, 74 A.D.3d 493, 493-94 (N.Y. App. Div. 1st Dep't 2010).

After exhausting all potential avenues of relief from the result of the State Court Proceedings, Plaintiff sought to trigger an investigation into corruption within the New York judiciary, sending reports to the State Committee on Judicial Conduct and the Departmental Disciplinary Committee.  (Am. Compl. ¶ 40-42.)  Both committees declined to open investigations.  (Id.)  Plaintiff also wrote to Governor Cuomo's Moreland Commission, requesting an investigation into corruption within the Appellate Division's First Department.  (Id. ¶ 63.)  Plaintiff alleges that, in order to prevent the exposure of judicial corruption, Governor Cuomo "knowingly and willfully shut down the Moreland Commission with knowledge of the plaintiff's complaint in order that no investigation be promulgated into either corruption within the court system, the Inspector General's Office nor the State Commission on Judicial Conduct . . . [and] to prevent the plaintiff recovering damages in the Supreme Court of the State of New York for losses arising as a result of the illegal 'Kornreich adjudications.'"  (Am. Compl. ¶ 65.)

In 2014, following the conclusion of the State Court Proceedings, Plaintiff learned of the publication of Justice Kornreich's decision (Am. Compl. ¶¶ 71, 72, 75, 78, 83), which he alleges contained defamatory statements about him.  (Id. ¶¶ 30, 60, 70, 79.)  Plaintiff also learned that ownership of the Aston Martin DB5 had been transferred from Gerst to Elkman via auction.  (Id. ¶¶ 7, 8, 66-67.)  Plaintiff wrote to Elkman, outlining what had occurred in the State Court Proceedings and claiming that he was the true owner of the Aston Martin DB5.  (See

Plaintiff's Affirmation in Reply to Defendant's Motion to Dismiss ("Plaintiff Opp."), Docket Entry No. 36, Ex. A.)

Plaintiff thereafter filed this action, on January 14, 2015. (See Docket Entry No. 1.) Plaintiff filed an Amended Complaint on May 4, 2015, claiming that corruption pervading the State Court Proceedings led to a violation of his constitutional rights, that the sale of the Aston Martin DB5 from Gerst to Elkman was a fraudulent conveyance, and that publication of Justice Kornreich's decision by the Defendants was part of a conspiracy to defame and injure the Plaintiff. (Am. Compl. ¶¶ 66-84.)

## DISCUSSION

Plaintiff's Amended Complaint

Plaintiff's Amended Complaint asserts fourteen Causes of Action. In his First Cause of Action, Plaintiff alleges that, because the State Court Proceedings upholding the 1999 Contract were unconstitutional, Plaintiff remains the true owner of the Aston Martin DB5, rendering Gerst's transfer of the vehicle to Elkman a fraudulent conveyance. (Am. Compl. ¶ 67).

Plaintiffs' Second, Third, Fourth, Fifth, Sixth and Seventh Causes of Action allege that the written opinions stemming from the State Court Proceedings contained defamatory lies about the Plaintiff and described Plaintiff's role in the litigation wrongfully and maliciously. (See generally id. ¶¶ 68-84.) Plaintiff further alleges that Gerst and Michael: purposefully published those opinions where they could be viewed by anyone in order to defame Plaintiff (id. ¶ 70); intentionally interfered with Plaintiff's business relations (id. ¶ 73); conspired to injure the Plaintiff (id. ¶ 76); intentionally interfered with Plaintiff's contractual relations

(Am. Compl. ¶ 79); intentionally inflicted emotional distress on the Plaintiff (id. ¶ 81); and intentionally interfered with Plaintiff's future business relations (id. ¶ 84).

Plaintiff's Eighth Cause of Action alleges that, as a result of Gerst and Michael's actions, Plaintiff was forced "needlessly to spend a large number of hundreds of hours trying to rectify the wrongs set out [in Plaintiff's complaint]," causing plaintiff "loss and damage."  (Id. ¶ 86.)

Plaintiff's Ninth, Tenth, Twelfth, Thirteenth, and Fourteenth Causes of Action allege that, as a result of Governor Cuomo's failure to prevent corruption within the First Department – as evinced by the Governor's dissolution of the Moreland Commission prior to an investigation of the Judiciary pursuant to Plaintiff's report – Plaintiff was deprived of his constitutional rights to freedom of speech (id. at ¶ 88-89), a republican form of government (id. ¶ 91-92), equal protection under the Fourteenth Amendment (id. ¶ 101), due process (id. ¶ 107), and all other "basic rights ensured by U.S. Code § 1983."  (Id. ¶ 115-116.)

Plaintiff's Eleventh Cause of Action alleges that Justice Kornreich's $25,000 award of sanctions and costs constituted extortion in violation of the Hobbs Act on the part of Justice Kornreich, Gerst and Michael, as well as the Special Referee who affixed the fee.  (Id. ¶¶ 30-31, 93-99.)

Subject-Matter Jurisdiction

The Defendants' motions raise numerous grounds for dismissal of the Amended Complaint.  As an initial matter, however, the Court must address whether Plaintiff has established the Court's subject matter jurisdiction of these claims because "[d]etermining the existence of subject matter jurisdiction is the threshold inquiry and a claim is properly dismissed

for lack of subject matter jurisdiction under [Federal Rule of Civil Procedure] Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Arar v. Ashcroft, 532 F.3d 157, 168 (2d Cir. 2008) (vacated on other grounds) (internal citations and quotation marks omitted).  In reviewing a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) "the court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff." Morrison v. National Australia Bank Ltd., 547 F.3d 167, 170 (2d Cir. 2008) (quoting Natural Res. Def. Council v. Johnson, 461 F.3d 164, 171 (2d Cir. 2006)).  However, "[a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists," Morrison, 547 F.3d at 170 (quoting Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000)), and such a showing may not be "made by drawing from the pleadings inferences favorable to the party asserting" subject matter jurisdiction.  Morrison, 547 F.3d at 170 (quoting APWU v. Potter, 343 F.3d 619 623 (2d Cir. 2000)).  In determining whether subject matter jurisdiction of the claims exists, the court may consider evidence outside the pleadings.  Morrison, 547 F.3d at 170.

*Governor Cuomo's Eleventh Amendment Immunity*

The Supreme Court has held unequivocally that "regardless of the nature of the relief sought," suits in federal court which name states as defendants are proscribed by the Eleventh Amendment, unless Congress has abrogated that state's Eleventh Amendment immunity, or the state has waived such immunity by unambiguously consenting to the suit.  See Pennhurst State School & Hospital v. Halderman, 465 U.S. 89, 100 (1984); see also College Savings Bank v. Florida Prepaid Postsecondary Educ. Expense Board, 527 U.S. 666, 670 (1999) ("we have recognized only two circumstances in which an individual may sue a State.  First, Congress may authorize such a suit in the exercise of its power to enforce the Fourteenth

Amendment . . . Second, a State may waive its sovereign immunity by consenting to suit"); McGinty v. State of New York, 251 F.3d 84, 91 (2d Cir. 2001). Such immunity unquestionably extends to agencies of the state. See Puerto Rico Aqueduct and Sewer Authority v. Metcalf & Eddy, Inc., 506 U.S. 139, 144 (1993) ("Absent waiver, neither a State or agencies acting under its control may be subject to suit in federal court") (internal quotation marks and citations omitted); see also Mamot v. Board of Regents, 367 F. App'x 191, 192 (2d Cir. 2010) (summary order) ("The Eleventh Amendment bars such a federal court action against a state or its agencies absent a waiver of immunity or congressional legislation specifically overriding immunity."). Furthermore, it is "well settled that the ambit of the Eleventh Amendment's immunity includes a governor, in his official capacity." See Nunez v. Cuomo, No. 11CV3457-DLI-LB, 2012 WL 3241260, at *20 (E.D.N.Y. Aug. 7, 2012) (internal quotation marks and citation omitted).

In the instant case, Plaintiff has asserted claims against the Governor in his official capacity, alleging that Cuomo failed to properly execute the laws of the State of New York, thereby permitting corruption to permeate both the judiciary and state agencies, ultimately causing injury to Plaintiff. (See, e.g., Am. Compl. ¶¶ 9, 28, 35, 40, 42, 51, 63-65.) However, Plaintiff has failed to plead a single fact demonstrating that either of the two exceptions to Eleventh Amendment Immunity is applicable here. (See generally Am. Compl.) "It is well-established that New York has not consented to § 1983 suits in federal court . . . and that § 1983 was not intended to override a state's sovereign immunity." Mamot, 367 F. App'x at 192 (internal quotation marks and citations omitted). Moreover, the Supreme Court has made it clear that neither the State, nor a governor acting in his or her official capacity, is a "person" for the purposes of a Section 1983 suit. See Will v. Mich. Department of State Police, 491 U.S. 58, 71 (1989) ("neither a State nor its officials acting in their official capacities are "persons" under

§ 1983."). Thus, Governor Cuomo is immune from suit under the Eleventh Amendment, and any claims asserted against him by Plaintiff must be dismissed.[4]

*Rooker-Feldman Doctrine*

Plaintiff's Amended Complaint must be dismissed for lack of subject-matter jurisdiction in light of the applicability of the Rooker-Feldman doctrine to this case. See Lipin v. National Union Fire Ins. Co. Of Pittsburgh, Pa., 202 F. Supp. 2d 126, 132-33 (S.D.N.Y. 2002) ("The Rooker-Feldman doctrine is a judicially-created doctrine of abstention based on principles of comity.  The doctrine precludes federal district court jurisdiction where the suit is in fact a collateral attack on a final state court judgment.  District courts thus "do not have jurisdiction . . . over challenges to state-court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional") (quoting District of Columbia Court of Appeals v. Feldman, 460 U.S. 462 (1983)).  Pursuant to the Rooker-Feldman doctrine, federal district courts lack subject matter jurisdiction of suits "that are, in substance, appeals from state-court judgments." Hoblock v. Albany County Bd. Of Elections, 422 F.3d 77, 84 (2d Cir. 2005).  "Underlying the Rooker-Feldman doctrine is the principle, expressed by Congress in 28 U.S.C. § 1257, that within the federal judicial system, only the Supreme Court may review state-court decisions." Id. at 85.

Federal courts lack subject matter jurisdiction of a case pursuant to the Rooker-Feldman doctrine when four requirements are met: 1) the federal court plaintiff has lost in state court; 2) the plaintiff complains of injuries caused by the state court judgment; 3) the plaintiff

---

[4] The Court further notes that Plaintiff's constitutional claims would, in any event, likely fail under the Rooker-Feldman doctrine, as they turn on the proposition that the State Court Proceedings were wrongly decided as well as corrupt. See discussion infra.

invites district court review and rejection of that judgment; and 4) the state court judgment was rendered before the district court proceedings commenced.  Hoblock, 422 F.3d at 85.  Each of these factors is present in the instant case.  The State Court Judgment was rendered before the instant proceedings were commenced.  See Steinberg v. Queens Import Motors, 74 A.D.3d 493, 493-94 (N.Y. App. Div. 1st Dep't 2010) (Plaintiff's appeal, citing February 11, 2010, as approximate date of Justice Kornreich's original Judgment) (see also generally Am. Compl., indicating completion of multiple appeals prior to filing of this action).  Steinberg lost in state court when Justice Kornreich dismissed his claims and granted Gerst's motion for sanctions and attorneys fees, a decision that was later affirmed on appeal.  Steinberg, 74 A.D. 3d 493.  The instant suit complains of injuries caused by the outcome of the State Court Proceedings (loss of the car, subjection to sanctions, and alleged deprivations of constitutional rights), which Plaintiff argues were unconstitutional for reasons that were rejected by the Appellate Division.

        Finally, Plaintiff has invited the Court to review and reject the state court's conclusions by declaring the State Court Proceedings unconstitutional, granting relief from the decisions rendered therein and removing the judge who rendered them.  In order for the Court to grant Plaintiff any of the relief that he seeks here, the Court would necessarily be forced to analyze and reverse or overturn decisions made in the Supreme Court Proceedings before Justice Kornreich, as well as the Appellate Division's affirmance of those decisions.  In order to grant Plaintiff relief pursuant to his first Cause of Action, this Court would be required to determine that Plaintiff was in fact the true owner of the Aston Martin DB5, a finding that would be in direct conflict with the outcome of the State Court Proceedings, in which Plaintiff's claim for rescission of the 1999 Contract was dismissed.  In order to grant Plaintiff relief pursuant to any of the claims he asserts in Causes of Action Two through Seven this Court would, at a minimum,

be required to find that the written decision rendered by Justice Kornreich as part of the State Court Proceedings, which was later published pursuant to the ordinary course of operations of the New York Supreme Court, in fact contained defamatory lies about the Plaintiff, thereby rendering its publication and dissemination tortious conduct.  In order to grant Plaintiff relief pursuant to the Section 1983 claims asserted in Causes of Action Nine, Eleven, Twelve, and Fourteen, this Court would need to find that Justice Kornreich's conduct throughout the State Court Proceedings denied Plaintiff his constitutional rights to free speech, due process, equal protection, and a republican form of government, which would necessarily lead to examination and alteration of the outcome of those proceedings.  Finally, in order to grant Plaintiff relief on his Eleventh Cause of Action, this Court would be required to find that Justice Kornreich sought to extort money from Plaintiff, under the guise of sanctions she awarded in favor of Gerst and Michael, which would ultimately lead to reversal of a decision rendered in the State Court Proceedings.  Thus, in order for this Court to award Plaintiff any of the relief he seeks in his Amended Complaint, the Court would necessarily need to review and reverse aspects of the State Court Proceedings, an outcome that is expressly foreclosed by the Rooker-Feldman doctrine.

Because Plaintiff's case satisfies each of the four criteria recognized by the Second Circuit, the Rooker-Feldman doctrine bars any inquiry into the State Court Proceedings.  Therefore, Plaintiff's complaint must be dismissed for lack of subject matter jurisdiction.  See Bourabah v. New York State Div. Housing and Cmty. Renewal, No. 08CV5693-LTS, 2009 WL 81157, at *1-2 (S.D.N.Y. Jan. 12, 2009) (dismissing case for lack of subject matter jurisdiction pursuant to Rooker-Feldman doctrine where Plaintiff lost in state Court, lost on appeal, and filed a suit on the same grounds in federal district court).

In light of the Court's conclusions that the action cannot be maintained against Governor Cuomo and that the Court lacks subject-matter jurisdiction of Plaintiff's claims, the Court need not address Defendants' remaining arguments for dismissal.

## CONCLUSION

For the foregoing reasons, Defendants' motions to dismiss the Amended Complaint are granted.

This Memorandum Opinion and Order resolves Docket Entry Numbers 20 and 29.  The Clerk of Court is respectfully requested to enter judgment dismissing the case for lack of jurisdiction and close this case.

The Court certifies, pursuant to 28 U.S.C. 1915(a)(3), that any appeal from this Memorandum Opinion and Order would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

Dated: New York, New York
       February 22, 2016

                                            /s/ Laura Taylor Swain
                                            LAURA TAYLOR SWAIN
                                            United States District Judge

**Copy Mailed To**:
Jonathan Steinberg, Esq.
200 East 90th Street, Apt. 17A
New York, New York 10129